85 So.2d 613 (1956)
Gilbert Francis MEADE, Jr., Appellant,
v.
STATE of Florida, Appellee.
Supreme Court of Florida. En Banc.
February 22, 1956.
*614 E.L. McMorrough, and Ray Sandstrom, Hollywood, for appellant.
Richard W. Ervin, Atty. Gen., and Jos. P. Manners, Asst. Atty. Gen., for appellee.
THOMAS, Justice.
On 11 January 1955 two indictments were filed in the Circuit Court of the Fifteenth Judicial Circuit for Broward County charging the appellant with murder in the first degree. The offenses were alleged to have been committed on the same day and the indictments in all respects were the same except that the appellant was charged in one with killing Domonick Albonizio by bludgeoning him with a shotgun and in the other with killing Evelyn Meade by shooting her with a pistol.
After various preliminary motions, which there is no need to discuss, the appellant on the same day, 3 March 1955, plead not guilty and not guilty by reason of insanity to each indictment. Immediately after the pleas were entered the court, evidently over the objection of the appellant, "consolidated [the two cases] for the purpose of trial."
Five days before the date set by the court for the trial, the appellant presented in writing his "Renewed Objection to Consolidation." From this paper we take his reasons for opposing a trial of both cases at once. First, he represented that in one case he contemplated introducing no testimony but his own, while in the other case he was considering the use of testimony of other witnesses, so if forced to meet both indictments in one trial, the use of the other witnesses relative to the crime charged in one indictment would result in his forfeiting the right to the concluding argument. He claimed also that he would be embarrassed in meeting the state's charges by the dissimilarity in the defenses to the two indictments, and in the proof relevant to the charges. On the eve of the trial, counsel for the state and the defendant and the judge indulged in a colloquy about the merits and demerits of the consolidation and the appellant reviewed his objections to such a course. The exchange of comment ended with the renewed decision that the indictments be consolidated "for the purpose of trial."
We think the objections offered by the appellant were good. We have already seen from the analyses of the indictments that the appellant was charged with having killed his victims with different instruments and in different ways. Conceivably elements peculiar to one homicide would not appertain to the other. The motive in one might not apply to the other. In the trial the appellant claimed that he killed Albonizio in self-defense and that the death of Evelyn Meade was accidental. It is plain from the verdicts that the jury found some difference in the seriousness of the offenses for while the appellant was found guilty, without qualification, of murdering Evelyn Meade the jury recommended mercy in the verdict finding him guilty of killing Albonizio.
By the statute, Sec. 918.09, Florida Statutes 1953, and F.S.A., the appellant was assured that if he offered "no testimony * * * except his own, [he would be] entitled to the concluding argument before the jury." This is a "substantial, procedural *615 right." Hall v. State, 119 Fla. 38, 160 So. 511, 512; Lopez v. State, Fla., 66 So.2d 807.
The procedure followed in this case was bound to result in confusion and, we think, damage to the appellant's defense.
We are convinced that the objections when made were valid and should have been sustained. The appellant was by the ruling required to go forward with his defense anticipating that if he offered testimony other than his own the final argument would be lost. It may be said that this particular error was cured when he did eventually close the argument but meanwhile he had followed the course charted by the judge in the original decision and we do not think that further to save the point he should have, at the conclusion of the state's evidence, again sought a ruling as to the effect upon the order of the argument of his offering testimony in addition to his own. He was probably forced to a decision involving the risk of withholding witnesses in order to protect the "substantial" right of making the final address to the jury. And that was an election that should have been freely made.
Our view that reversible error was committed in consolidating the cases is confirmed by another ruling made in the course of the trial.
The court ruled "that the defendant and the State [would] be granted ten peremptory challenges and [would] be limited to ten peremptory challenges, only one defendant being tried in the cause." When the appellant had challenged ten jurors peremptorily he undertook to exercise the eleventh peremptory challenge and the judge announced: "The motion will be denied, ten peremptory challenges having already been used by the defendant."
Confining the challenges to the number that would have been allowed had the defendant been on trial for the murder of one person was another illustration of the mischief that results from trying together two cases like these.
Of course, the purpose of peremptory challenges is the effectuation of the constitutional guaranty of trial by an impartial jury by the exercise of the right to reject a certain number of jurors whom the defendant for reasons best known to himself does not wish to pass upon his guilt or innocence. In this manner he may eliminate from service jurors who may be objectionable but who may not be shown so prejudiced as to be successfully challenged for cause. Carroll v. State, 139 Fla. 233, 190 So. 437.
The statute dealing with the subject of peremptory challenges contains a provision that the defendant shall be allowed ten of such challenges if the offense charged is punishable by death or life imprisonment and that if two or more defendants are jointly tried, each of them shall be allowed ten peremptory challenges. Sec. 913.08, Florida Statutes 1953, and F.S.A. But it does not follow that if a defendant is faced with charges of murdering two persons, the number of his peremptory challenges should be restricted ot ten simply because there is but one defendant. When the fundamental purpose of the challenges is considered, the contrary is plain.
If two or more persons are charged with killing a single person, each defendant is given the ten challenges so he may excuse that many jurors, not only because of their attitude towards the defendant or relationship with him, but because of their attitude toward the victim, or relationship with him, which would cause the defendant to believe that animosity toward him was harbored by the prospective juror. It requires little imagination to think of reasons for excusing, in this case, prospective jurors because of some attitude or relationship relative to appellant's wife, Evelyn Meade, that would have no application to the other victim, Albonizio, and the other way about. Though the common denominator under the statute is apparently one, the defendant, we think this is no reason to hold that the same denominator is appropriate if the lone defendant is charged in separate indictments with *616 killing two different persons, even if we approved the consolidation in the first place.
All the references in the statute, Sec. 913.08, are to an offense, in the singular, and it is in the concluding paragraph that provision is made that when defendants are jointly tried each shall have the privilege of exercising the number of challenges specified.
In view of the purpose of peremptory challenges, it seems to us that even if consolidation of two cases of such gravity should be approved, there would be as much reason for allowing the defendant twice the number of specified challenges as to allow each of two defendants ten challenges upon their trial for murdering a single person. In either situation the number of challenges, twenty, would be the same as the total number assured by the statute if separate trials should be conducted.
We are referred to no statute authorizing the incorporation of criminal cases for trial and we know of no decision of this court on the subject except the one in Hall v. State, infra, and this opinion helps us little because no objection was made to the consolidated trial and it was not a prosecution which could result in the imposition of the death penalty.
What we are deciding is that in a situation like this we cannot approve the procedure followed because miscarriage of justice would too likely result, and the consequence of such a miscarriage in a prosecution culminating in electrocution is horrible to contemplate. There is much evidence in our statutes and decisions that greater care must be taken in a prosecution of such moment than in other criminal prosecutions. As we have already noted more peremptory challenges are allowed than in other criminal prosecutions. A jury of twelve, twice the number required in other criminal cases, is provided in Sec. 913.10, Florida Statutes 1953, and F.S.A. Although a jury may be waived in criminal prosecutions generally, such a waiver may not be made "where a sentence of death may be imposed". Sec. 912.01, Florida Statutes 1953, and F.S.A. The charges to the jury shall be in writing. Sec. 918.10(2), Florida Statutes 1953, and F.S.A. Counsel for an insolvent defendant in a capital case is required. Sec. 909.21, Florida Statutes 1953, and F.S.A. Capital cases may be tried only on an indictment by a grand jury while other cases may generally be tried on information. Sec. 904.01, Florida Statutes 1953, and F.S.A. And when a case in which the extreme penalty has been imposed reaches this court for review the court is obligated to examine the evidence "to determine if the interests of justice require a new trial, whether the insufficiency of the evidence is a ground of appeal or not." Sec. 924.32(2), Florida Statutes 1953, and F.S.A.
All these safeguards are thrown about the one accused of a crime which may result in his being put to death. The care with which he should be tried corresponds with the awful responsibility of taking human life to atone for crime.
We fully understand that in some jurisdictions consolidations are authorized by statute and that in at least one state, Pennsylvania, a consolidation of two charges against one defendant for murdering two persons was approved and in the trial the peremptory challenges were limited to the number allowable in a prosecution for the murder of one person by a single defendant. Commonwealth v. Peronace, 328 Pa. 86, 195 A. 57. But objections in the Peronace case to that procedure was not made so far as we can learn from the opinion.
We have already referred to our decision that it was within the discretion of the court to order consolidation of two informations for connected larcenies of cattle "[e]specially * * * where no objection [was] made." Hall v. State, Fla., 66 So.2d 863, 864.
But we do not extend the ruling in that case to the immediate case; we do not adopt the ruling indicated in the decision of the Pennsylvania Supreme Court in Commonwealth v. Valotta, 279 Pa. 84, 123 A. 681; and we do not approve the procedure that was followed in the instant case. We think confusion, uncertainty, and outright *617 damage to appellant's fundamental rights, resulted and that the gravity of the charges and the caution with which they should be entertained by court and jury make it necessary that they be tried anew, and separately.
Reversed.
DREW, C.J., and TERRELL, HOBSON, ROBERTS, THORNAL and O'CONNELL, JJ., concur.